IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CT-3179-FL

| | |
|---|---|
| GUSTAVUS LITTLE, | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| DANIEL ARTIS, JAN MICHAEL CANNON, ZACHARY MOORE, NELSON STEVENS, TIFFANY WEST, and LARIE VIERA, | ) |
| Defendants. | ) |

This matter is before the court on defendants Zachary Moore, Nelson Stevens, Tiffany West, and Larie Viera's ("moving defendants") motion to dismiss (DE 32) plaintiff's amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6). The motion was briefed fully and the issues raised are ripe for ruling. For the following reasons, the motion is granted.

### BACKGROUND

Plaintiff, a former state inmate, commenced this action by filing complaint on May 22, 2020, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendants failed to protect him from an assault by other inmates when he was housed at the Greene Correctional Institution ("Greene C.I.") in May 2017, in violation of the Eighth and Fourteenth Amendments to the United States Constitution. Defendants, sued in their individual capacities, are Daniel Artis ("Artis"), a correctional lieutenant at the Greene C.I.; Jan Michael

Cannon ("Cannon"), a program coordinator or case manager at the Greene C.I.; and correctional officers Zachary Moore ("Moore"), Nelson Stevens ("Stevens"), Tiffany West ("West"), and Larie Viera ("Viera").

On November 6, 2021, moving defendants filed the instant motion to dismiss plaintiff's first amended complaint, arguing that it fails to state a claim on which relief can be granted. In addition, defendants Stevens and West argue the claims against them should be dismissed based on insufficient service of process. Plaintiff responded in opposition to the motion to dismiss, and moving defendants replied.

Defendant Cannon filed answer in lieu of joining the instant motion to dismiss, and, accordingly, the case will proceed to discovery as to claims asserted against him. In addition, defendant Artis, who is not represented by counsel in this action, did not file responsive pleading directed to the amended complaint.

## STATEMENT OF THE FACTS

The facts, as alleged in the amended complaint, may be summarized as follows. On May 21, 2017, two inmates who are members of the United Blood Nation gang approached plaintiff at the Greene C.I. and directed him to obtain synthetic marijuana, also known as "K2," from family or friends outside the institution. (Am. Compl. (DE 30) ¶¶ 2, 10).[1] Plaintiff had neither the "means nor the inclination" to smuggle K2 into the Greene C.I. and he told the inmates that he could not help them. (See id. ¶ 13). The inmates did not believe plaintiff. (Id. ¶ 14). They forced plaintiff to call his family members and ask them to smuggle K2 into the prison. (Id.).

---

[1] The amended complaint has two paragraphs labeled "2" due to a scrivener's error. The citation here corresponds to the first paragraph 2 on page one. The remaining citations to the amended complaint are not affected by the error.

Plaintiff's family told him they could not help him. (Id. ¶ 15). After plaintiff informed the two inmates that he could not obtain K2, they told plaintiff they "would be back to see him" and then left the area. (Id. ¶ 16).

That same day, plaintiff approached defendant Cannon and informed him there was a gang problem at the Greene C.I., and that two gang members were attempting to extort him. (Id. 17). Defendant Cannon agreed with plaintiff that there was a gang problem but did not otherwise respond to plaintiff's concerns. (Id. ¶ 18).

On May 22, 2021, the same two inmates again approached plaintiff and directed him to smuggle K2 into the prison. (Id. ¶¶ 19–20). Plaintiff reiterated that he could not obtain K2 from anyone outside the prison. (Id. ¶ 20). Several hours later, the inmates returned and accused plaintiff of lying to them. (Id. ¶ 22). The inmates would not take "no" for an answer and threatened to harm plaintiff, although they eventually left the area without assaulting plaintiff. (Id. ¶ 23). Later that same day, one of the same inmates and another gang member approached plaintiff and again asked about the K2 they were trying to smuggle into the prison. (Id. ¶¶ 24–25). These inmates informed plaintiff "there would be trouble" if he continued refusing their requests. (Id. ¶ 25).

That evening, plaintiff met with defendant Cannon and reiterated his concerns about the gang activity. (Id. ¶¶ 28–29). He also warned defendant Cannon that the gang members "had threatened him and placed him in further fear for his safety." (Id. ¶ 29). Defendant Cannon, however, "merely agreed again that something should be done about the gang problem, then again walked away from plaintiff." (Id.).

Between 5:00 and 6:00 p.m. that evening, defendants Moore, West, Stevens, and Viera

3

were correctional officers on duty for the dormitories labeled I Dorm, F Dorm, and K Dorm, as well as the nearby outside area known as Yard 1. (Id. ¶ 31). Defendants Moore and Stevens were responsible for patrolling F Dorm. (Id. ¶ 32). Defendant West was responsible for patrolling I Dorm, J Dorm, K Dorm, and Yard 1. (Id. ¶ 33). Defendant Viera was responsible for patrolling all dormitories and yards on the compound. (Id. ¶ 34). These defendants were scheduled for shift change that evening at 6:00 p.m. (Id. ¶ 35).

At approximately 5:05 p.m., plaintiff began walking to from Yard 1 to the I Dorm. (Id. ¶ 36). As he approached the dorm, he saw five inmates walking towards him, three of whom were the gang members who threatened him earlier that day and on May 21. (Id.). The inmates informed plaintiff they were going to "put him in check" for lying about his inability to smuggle K2 into the prison. (Id. ¶ 37). They surrounded plaintiff, held a knife to his side, and forced him to walk to F Dorm with them. (Id. ¶ 39). At the time plaintiff was accosted, correctional officers were not patrolling Yard 1 and there were no officers in the control booth supervising the area. (Id. ¶ 40).

The inmates took plaintiff into a small office in F Dorm. (Id. ¶ 42). No officers were present in F Dorm at the time. (See id. ¶¶ 41–42). Eleven gang members surrounded plaintiff, and one of the inmates hit plaintiff in the head with a combination lock. (Id. ¶¶ 43–45). Another inmate then stabbed plaintiff on his left side with a metal shank. (Id. ¶ 45). The inmates proceeded to kick and stomp plaintiff and hit him with the combination lock for several minutes. (Id. ¶ 47). Following the attack in the office, the inmates pulled plaintiff into the F Dorm, threw him around the dorm, and continued beating him. (Id. ¶ 49). Other inmates observed the assault and "yelled out to defendants" to help plaintiff, but defendants did not come to assist plaintiff.

4

(Id. ¶ 50).

The inmates then dragged plaintiff into the F Dorm dayroom and stripped away all his clothing. (Id. ¶ 51). They continued beating him, eventually breaking his nose. (Id. ¶ 52). Around 5:40 p.m., the inmates dragged plaintiff into a shower to try to wash the blood off him. (Id. ¶ 53). At approximately the same time, the inmates fled the area because they were concerned that new officers would soon be making rounds due to the shift change. (See id. ¶ 54).

Plaintiff then limped back to I Dorm, covered in blood and with deep bruising and swelling on his face. (Id. ¶¶ 61, 63). Several inmates came to plaintiff's aid and escorted him to the nursing station. (Id. ¶ 64). At the nursing station, plaintiff encountered defendant West, called out for her, and she came running up to assist plaintiff. (Id. ¶¶ 65–66). Plaintiff then collapsed and began to slip in and out of consciousness. (Id. ¶ 67).

Greene C.I. staff transported plaintiff to a local hospital, where he was admitted for three days. (Id. ¶ 70). Medical staff ran numerous tests and diagnosed plaintiff with, inter alia, the following: severe concussion; comminuted displaced bony nasal septal and nasal bone fractures; anterior thyroid cartilage deformity; fractured larynx; extreme facial bruising; soft tissue damage to the nose, right cheek, and right orbital, extending to his forehead; bony calvaria or skull base fracture; and small chip fracture at the C5 vertebrae. (Id. ¶ 72). Plaintiff also learned that his jaw was partially dislocated. (Id. ¶ 73). Doctors performed surgery to repair plaintiff's nose and facial fractures, and medical staff had to teach plaintiff how to walk again. (Id. ¶¶ 75–76). Plaintiff continues to suffer from severe pain, nosebleeds, trouble breathing, and severe headaches, and he may need further surgery to help him breath normally. (Id. ¶¶ 80–81, 87). In addition, plaintiff has developed severe mental health symptoms including auditory command

5

hallucinations that "tell him to do bad things." (Id. ¶¶ 83–84). He recently was diagnosed with schizoaffective disorder (manic type), post-traumatic stress disorder, schizophrenia, non-psychotic mental disorders, and traumatic brain injury. (Id. ¶¶ 83, 85).

## COURT'S DISCUSSION

A.   Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B.   Analysis

   1.   Eighth Amendment Claim

The court begins with plaintiff's Eighth Amendment failure to protect claim. The Eighth Amendment proscribes "cruel and unusual punishments." U.S. Const. amend. VIII. Under the Eighth Amendment, prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quotation omitted); see Hudson v. Palmer, 468 U.S. 517, 526–27 (1984); Danser v. Stansberry, 772 F.3d 340, 346 (4th

Cir. 2014). "In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must [allege] both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotation omitted). As to the first prong, "a prisoner must [allege] . . . a serious or significant physical or emotional injury" or that "he was incarcerated under conditions posing a substantial risk of serious harm." Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015) (internal quotation omitted); Danser v. Stansberry, 772 F.3d 340, 346 (4th Cir. 2014) (internal quotation omitted).

The deliberate indifference prong requires a showing that defendants knew of and disregarded an excessive risk to inmate health or safety. Farmer, 511 U.S. at 837–38; Danser, 772 F.3d at 347. A plaintiff may allege deliberate indifference by asserting the prison official had actual knowledge of the risk and failed to protect him. Farmer, 511 U.S. at 842–43. As an alternative, "a prison official's subjective actual knowledge can be proved through circumstantial evidence" by showing that the risk was "obvious" and that the circumstances suggest the official must have known about it. Makdessi, 789 F.3d at 133; see also Farmer, 511 U.S. at 842. The official "must also have recognized that his actions were insufficient to mitigate the risk of harm to the inmate." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quotations omitted).

Here, moving defendants argue that plaintiff has not alleged sufficient facts to establish they were deliberately indifferent to a known risk to plaintiff.[2] The court agrees. The complaint does not allege specific facts establishing that moving defendants were aware of any risk to

---

[2] Moving defendants do not challenge plaintiff's allegations that he suffered a serious physical and emotional injury (the objective component).

7

plaintiff at the time of the attack. Plaintiff, for example, does not allege that he personally informed moving defendants that the gang members were threatening him, nor does he sufficiently allege they were aware of a pervasive gang problem or other generalized risk to plaintiff/other inmates. See Farmer, 511 U.S. at 842–43; Makdessi, 789 F.3d at 133.

Similar to the original complaint, plaintiff alleges in conclusory fashion that defendants collectively "allow[ed] inmates to access weapons," "allow[ed] inmates freedom of movement to unauthorized areas while knowing the threat to plaintiff," and "fail[ed] to act after plaintiff, on two occasions, specifically warned them of the threat." (Am. Compl. (DE 30) ¶ 89(i)–(iii). As the court previously explained, these allegations are far too conclusory to state a claim. See Iqbal, 556 U.S. at 678 (explaining "naked assertions devoid of further factual enhancement" are insufficient to state a claim) (quotations omitted); (see DE 29 at 6–7). To the extent plaintiff's allegation that he warned defendants of the threat on "two occasions" is specific, the complaint makes clear that this allegation applies only to defendant Cannon, who is not a party to the instant motion to dismiss. (See Am. Compl. (DE 30) ¶¶ 17–18, 29–30). As noted above, plaintiff does not specifically allege that he informed any of the other defendants about the risk of harm or that they otherwise had direct knowledge of the risk.

Alternatively, defendants' knowledge may be inferred from circumstantial evidence, such as where "the substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official . . . must have known about it." See Makdessi, 789 F.3d at 133. Thus, "even a guard able to prove that he was in fact oblivious to an obvious injury of sufficient seriousness may not escape liability if it is shown, for example, that he merely refused to verify 'underlying facts that

8

he strongly suspected to be true [or] declined to confirm inferences of risk that he strongly suspected to exist.'" See Brice v. Va. Beach Corr. Cntr., 58 F.3d 101, 105 (4th Cir. 1995) (quoting Farmer, 511 U.S. at 843 n.8).

Plaintiff primarily argues the court can infer deliberate indifference because moving defendants failed to patrol or otherwise supervise the dorms during the approximate 30 minutes in which plaintiff was assaulted. But this fact does not establish a longstanding, pervasive, or well-documented risk of harm such that deliberate indifference may be inferred. See Makdessi, 789 F.3d at 133; Brice, 58 F.3d at 105. To the extent plaintiff argues moving defendants were deliberately indifferent because their failure to supervise the dorms and yard area contravened their assigned duties as corrections officers, "there is no [allegation] showing that this dereliction of duty constituted anything other than negligence." Danser, 772 F.3d at 348. And a "showing of mere negligence will not suffice" to establish deliberate indifference. Id. at 347 (quotations omitted).

In addition, plaintiff alleges defendant Cannon (who did not join the motion to dismiss) agreed with plaintiff that there was a gang problem at the Greene C.I., and that he "knew that there were numerous [United Blood Nation] gang members at Greene, that they caused drugs to be smuggled into prison for sale and use, that they often threatened other inmates, sometimes beat them severely, and occasionally killed them for refusing to comply with their demands." (See Am. Compl. (DE 30) ¶¶ 17–18, 29–30). While these allegations arguably establish defendant Cannon's actual subjective knowledge, there is no allegation suggesting moving defendants themselves were aware of the gang problem at Greene C.I. See Danser, 772 F.3d at 348 ("To establish that a risk is 'obvious' in this legal context, a plaintiff generally is required to show that

9

the defendant had been exposed to information concerning the risk and thus must have known about it") (quotations omitted).

And even if the court could infer that moving defendants were aware that inmates "sometimes" were assaulted by gang members and "occasionally killed," these allegations do not establish a longstanding, pervasive problem with inmate assaults such that it would be per se deliberate indifference to leave the inmates unsupervised for 30 minutes. See Makdessi, 789 F.3d at 133. Finally, plaintiff does not allege that moving defendants were aware of a longstanding, pervasive risk of assault with respect to the specific population of inmates that they left alone for 30 minutes. See Brice, 58 F.3d at 105 (requiring allegations that defendant "refused to verify underlying facts that he strongly suspected to be true" or "declined to confirm inferences of risk that he strongly suspected to exist"); compare Makdessi, 789 F.3d 134 (plaintiff's physical and mental infirmities, together with numerous complaints to prison officials regarding physical and sexual abuse and that plaintiff was placed in a cell with an "aggressive prison gang member" was circumstantial evidence of deliberate indifference in failure to protect case).

In sum, plaintiff has failed to allege sufficient facts to establish moving defendants' subjective deliberate indifference. Accordingly, the court grants moving defendants' motion to dismiss as to the Eighth Amendment claim.

2. Substantive Due Process Claim

Plaintiff also asserts a substantive due process claim pursuant to the Fourteenth Amendment to the United States Constitution. However, "[w]here a particular [constitutional] Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due

process, must be the guide for analyzing these claims." County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998) (quoting Albright v. Oliver, 510 U.S. 266, 273 (1994) (plurality opinion of Rehnquist, C.J.)).

Here, as discussed above, the Eighth Amendment provides the appropriate analytical framework for plaintiff's failure to protect claim, and plaintiff therefore cannot separately obtain any relief under the rubric of substantive due process. See id.; see also Graham v. Connor, 490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims."); Williams v. Benjamin, 77 F.3d 756, 768 (4th Cir. 1996) ("[I]t is now well established that the Eighth Amendment serves as the primary source of substantive protection to convicted prisoners and the Due Process Clause affords a prisoner no greater substantive protection than does the Cruel and Unusual Punishments Clause.") (quotations omitted). Accordingly, moving defendants' motion is granted as to the substantive due process claim.[3]

3.  Leave to Amend

Finally, plaintiff requests leave to amend the complaint in the event the court determines the factual allegations fail to state a claim against moving defendants. The nature of dismissal is a matter within "the sound discretion of the district court." See Adbul-Mumit v. Alexandria Hyundai, LLC, 896 F.3d 278, 292 (4th Cir. 2018). Here, the court previously explained the pleading deficiencies in the original complaint, (see DE 29 at 5–7), but plaintiff failed to correct them in his first amended complaint. Accordingly, the court denies plaintiff's request to file

---

[3]  Plaintiff does not assert a procedural due process claim. (See Am. Compl. (DE 30) ¶¶ 93–98).

11

second amended complaint. See Foman v. Davis, 371 U.S. 178, 182 (1962) (leave to amend may be denied where plaintiff failed to cure deficiencies by amendments previously allowed); Adbul-Mumit, 896 F.3d at 292. In addition, further pleading cannot cure the legal deficiencies in the substantive due process claim.

C.      Defendant Artis

As noted above, defendant Artis did not file a motion to dismiss, and he is technically in default. See Fed. R. Civ. P. 55(a). However, "[w]here the liability is joint and several or closely interrelated and a defending party establishes that plaintiff has no cause of action or present right of recovery, this defense generally inures also to the benefit of a defaulting defendant." U.S. ex rel. Hudson v. Peerless Ins. Co., 374 F.2d 942, 945 (4th Cir. 1967). Plaintiff's claims against defendant Artis are without merit for the reasons stated above in the analysis of moving defendants' motion to dismiss. Indeed, the complaint fail to allege any facts tying defendant Artis to the alleged constitutional violations. (See generally DE 30). Accordingly, the claims against defendant Artis also are dismissed.

## CONCLUSION

Based on the foregoing, moving defendants' motion to dismiss (DE 32) is GRANTED, and the claims against defendants Artis, Moore, Stevens, West, and Viera are DISMISSED with prejudice. The court also sua sponte DISMISSES the Fourteenth Amendment substantive due process claim alleged against defendant Cannon. The sole remaining claim in this action is the Eighth Amendment claim asserted against defendant Cannon. Where defendant Cannon has filed his responsive pleading, the clerk is DIRECTED to issue the court's initial order on planning and scheduling setting procedures for conference activities pursuant to Federal Rule of Civil Procedure

12

26(f), initial disclosures, and submission of the parties' joint report and proposed plan for discovery.

SO ORDERED, this the 27th day of June, 2022.

                                                LOUISE W. FLANAGAN
                                                United States District Judge